AUSTIN v. BARKER.

(Supreme Court, Appellate Division, Fourth Department.  January 5, 1904.)

1. SEDUCTION—SUFFICIENCY OF EVIDENCE—HYPNOTISM.
    In an action for seduction, the seduced testified that owing to defendant's having hypnotized her she had no knowledge or recollection of the acts of illicit intercourse until after the birth of her child, when, being placed in a hypnotic condition by a third person, she recalled the events. Evidence examined, and *held* insufficient to sustain a verdict for plaintiff.

Appeal from Trial Term, Oneida County.

Action by David Austin against Frank Barker.  From a judgment for plaintiff and the denial of a motion on the minutes for a new trial, defendant appeals.  Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

L. M. Martin and Thomas S. Jones, for appellant.

D. F. Searle, for respondent.

HISCOCK, J.  This action was brought by plaintiff to recover damages claimed to have been suffered by reason of the seduction of his daughter, Edith Austin, by the defendant.

Plaintiff, with his family, including said daughter, and the defendant resided upon nearby farms in one of the towns of Oneida county. The daughter and the defendant had been schoolmates and acquaintances for many years.  In August, 1901, the daughter, being unmarried, gave birth to a child of full development.  She was at that time about 22 years of age, and the defendant was of about the same age. It was claimed upon the trial that upon various dates, commencing upon October 30, 1900, and extending to about January 1, 1901, the defendant had had improper relations with the daughter, which resulted in the subsequent childbirth.  The only evidence directly tending to prove the unlawful acts was given by the daughter.  She testified that they all occurred in a room in her father's house upon various evenings when defendant visited her there.  This room was situated next to and separated only by an ordinary door from another room in which her father or mother, or both, were ordinarily present at the time when defendant was with her.  Speaking of the first of these occasions of improper conduct with her, she testified, in effect, that it was in the evening; that defendant came to the house, and with him she went into the room mentioned, where after a while he lay down upon a couch and slept; that thereafter he got up and made an improper proposal to her, which she indignantly rejected, whereupon they sat and talked for a few moments; that then the defendant forcibly took her and placed her upon the couch and accomplished his purpose; that she resisted and struggled, but did nothing to attract the attention or assistance of her parents, one or both of whom were then in the adjoining room above referred to. The defendant, who was called as a witness in his own behalf, absolutely and unqualifiedly denied his guilt and responsibility for the daughter's condition, and at considerable length gave testimony to

the effect that he was at other places and with other persons upon some, at least, of the occasions when plaintiff claimed that he was present with his daughter. Various witnesses were called upon each side to give evidence, mainly relating to the whereabouts of the defendant upon various occasions, as tending to corroborate and support the plaintiff's complaint or the defendant's defense, respectively. Most, if not all, of them were in some way related to one of the parties, and they were therefore more or less interested in the event of the trial in which they participated. Defendant testified, and we nowhere find any contradiction of him in this respect, that notwithstanding their close proximity no complaint or suggestion was ever made by plaintiff or any one in his behalf that he (defendant) had been guilty of improper conduct with the daughter, or was responsible for her condition, until many weeks after the birth of the child, when he received a letter from an attorney.

While some of the circumstances in the case thus briefly outlined are somewhat unnatural, they, perhaps, are not so extraordinary that we should feel justified in refusing to accept and abide by the verdict of the jury upon them, if there were nothing else to be considered. Other evidence, however, to which we shall now refer, was given upon the trial, of so unusual a character that we feel unwilling to allow the verdict to be based upon it. After the daughter had been quite extensively examined both on behalf of the plaintiff, who called her, and by counsel for the defendant, and had left the stand, she was, upon the urgent request of the defendant's counsel, predicated upon new information received by him, recalled and examined. She then in effect testified that she was entirely unconscious of defendant's various acts of relation with her at the various times when the same were occurring; that she did not know and was unaware that they had at all occurred during the entire term of her pregnancy, and down to a period of several weeks after the birth of her child; that upon the first occasion of improper conduct she simply realized and understood what was taking place up to the time the defendant placed her upon the couch; that in October, 1901, she was visited by the plaintiff's attorney, and, as the result of what then occurred, her mind was so influenced and awakened that it grasped a recollection or consciousness of defendant's acts with her in the fall of 1900, so that from that time on, down to and including the trial, she had a present knowledge and recollection that the defendant had committed with her acts resulting in her seduction and childbirth.

It also appeared upon the trial that, during the period in 1900 under review, the complainant had made entries in a diary which mentioned the defendant and contained references which were assumed to relate to and be based upon his visits to her and various results flowing therefrom. Subsequently she had no consciousness of having made these entries, but upon the occasion of the visit of the attorney, aforesaid, and without knowing it, she procured the diary and gave to him various of these entries. After this visit she also became aware of having made the entries in the diary at the times of the various occurrences therein referred to. The jury were invited to, and, judging from their verdict, apparently did, enter the rather un-

known and uncertain realms of hypnotism in search of an explanation for this remarkable experience and testimony of plaintiff's chief witness.   She testified, and it then was and now is claimed, that defendant hypnotized her, and so made her unconscious of his unlawful acts with her at the time they were occurring, and that this condition of unconsciousness thereof continued until her father's attorney visited her nearly a year afterwards, and again placed her in a hypnotic condition, through and by means of which her consciousness was so restored that it seized hold of events of which she had theretofore been unconscious.

We do not feel called upon to discuss or determine the rather shadowy boundaries of hypnotism, or its possibilities in explaining and accounting upon legal trials for what otherwise might fairly be considered as incredible.   It is suggested by plaintiff's counsel upon this appeal that we may judicially recognize as a matter of ordinary experience and knowledge that the abnormal physical conditions and changes which precede childbirth are frequently accompanied by a corresponding mental disturbance, including loss of memory.   If we should accept this suggestion, it would not explain that which confronts us in this case, for plaintiff's witness did not for a period lose recollection of things theretofore lodged in her mind, with subsequently recurring memory.   Through an alleged peculiar mental condition she became conscious and aware of events of which she had never before been at all conscious.   We are therefore thrown back upon plaintiff's explanation and theory of hypnotism, and it suffices to apply to it the ordinary rules of evidence and common sense.   The explanation given in behalf of plaintiff's case is opposed to ordinary experience and knowledge.   If, as explanatory thereof, plaintiff relied upon some science and theory not generally known or understood, it was proper for him to give the jury the light of some competent evidence tending to sustain the probabilities, or at least possibilities, of what was claimed.   Nothing of this kind was done upon the trial, unless there may have been read then, as upon this appeal, the unverified statements and opinions of certain authors.   We are unwilling to accept them, or the otherwise unconfirmed statements of the witness that at certain times in 1900 she was placed in an hypnotic condition whereby she was made unconscious, and again in a similar condition in 1901 whereby she was made conscious, of certain events. The rejection of this evidence leaves this case, in our opinion, without sufficient testimony upon which to rest the burden carried by plaintiff to properly establish his case, and sustain the verdict of the jury.

It is urged by plaintiff's counsel, as tending to show the truthfulness of the witness, that nothing but honesty could have prompted her to give this evidence, and that if she had been untruthful she would have suppressed her statements upon this subject.   It is perhaps not worth while to consider at any length this aspect of the testimony.   It merely may be suggested that the failure for over a year to make any complaint against defendant as the author of the misfortune of plaintiff's daughter was somewhat strange unless explained in some manner, and that such explanation was furnished by the testimony as to the daughter's condition, if true.

Various exceptions were taken by the defendant to the reception and exclusion of evidence, and to refusals by the learned trial justice to charge, which we do not consider in view of the conclusions reached upon the questions discussed. The judgment and order should be reversed, upon the ground that the verdict was against the weight of evidence.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event upon questions of fact. All concur.